UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE WILBERTO CERRANO VIANA
(A-214-557-219),

        Petitioner,

    v.

WARDEN, CALIFORNIA CITY
DETENTION FACILITY, et al.,

        Respondents.

No.  1:26-cv-2362 DC CSK

FINDINGS & RECOMMENDATIONS

Petitioner Jose Wilberto Cerrano Viana (A-214-557-219), a native and citizen of El Salvador, who is proceeding with counsel, entered the United States in September 2021, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  On March 20, 2026, petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") and has been in continuous detention since this date.  This habeas action concerns petitioner's detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

///

///

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.    FACTUAL BACKGROUND[2]

Petitioner is a native and citizen of El Salvador.  (ECF No. 1 at 11; ECF No. 1-2 at 2.)  Petitioner last entered the United States in September 2021.  (ECF No. 1 at 11.)  Petitioner was not encountered by U.S. immigration officials at the time of entry.  (Id.)  On or around August 4, 2023, petitioner filed an application for relief under the Violence Against Women Act (Form I-360) with the Department of Homeland Security ("DHS").  (ECF No. 1-2.)  On January 18, 2024, U.S. Citizenship and Immigration Services ("USCIS"), which is part of DHS, issued petitioner a Prima Facie Determination that petitioner had made a prima case for classification under the self-petitioning provisions of the Violence Against Women Act, which was valid for one year and would be automatically extended if a decision was not made.  (ECF No. 1-5 at 7-8.)  USCIS renewed petitioner's Prima Facie Determination under the Violence Against Women Act multiple times, including on January 8, 2025, June 27, 2025, and December 23, 2025, extending the Prima Facie Determination through June 21, 2026.  (Id. at 1-6.)

On or around August 4, 2023, petitioner filed an application for adjustment of status (Form I-485) with DHS.  (ECF No. 1-3.)  On or around August 4, 2023, petitioner filed an application for waiver of grounds of admissibility (Form 1-601) with DHS.  (ECF No. 1-4.)  These applications remain pending.  (ECF No. 1 at 13.)

On or around August 8, 2024, DHS approved petitioner's application for employment authorization, which is valid through August 5, 2029.  (ECF No. 1 at 13; ECF No. 1-6.)  Petitioner has continuously resided in Maryland since September 2021, has a partner, is the father to three United States citizen children who are 4, 8, and 12 years old, and provides for the daily care and financial support of his three children.  (ECF No. 1 at 2, 11.)

On March 20, 2026, petitioner was arrested and detained by three individuals who arrived in unmarked vehicles wearing plainclothes, and who petitioner later learned were ICE officers.  (See ECF No. 1 at 11.)  Petitioner was taken to Baltimore, Maryland, then transported to Arizona, and then transported to detention facilities in California.  (Id.)  Petitioner has been in continuous

---

[2]  The factual background is taken from the petition and attached exhibits.  (ECF Nos. 1, 1-2, 1-3, 1-4, 1-5, 1-6.)  Respondents do not contest petitioner's factual allegations.  (ECF No. 7.)

custody since March 20, 2026.  (Id.)  Respondents do not contest petitioner's factual assertions.  (See ECF No. 7.)

## II.    PROCEDURAL BACKGROUND

On March 27, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On April 15, 2026, respondents filed an opposition to the petition, and on April 24, 2026, petitioner filed a reply.  (ECF Nos. 7, 11.)  Respondents have confirmed that this district court has jurisdiction over this petition.  (ECF No. 10.)  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his continued detention based on the violation of the following: (1) the Immigration and Nationality Act ("INA"); and (2) the Fifth Amendment due process clause.  (ECF No. 1 at 13-15.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (ECF No. 7 at 1.)  Respondents cite Avila v.

Bondi, No. 25-3741, 2026 WL 819258 (8th Cir. Mar. 25, 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b)(2)(A) is applicable here. (Id.) Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (Id.)

### A.    Statutory Claim (Claim One)

The first issue here is whether petitioner, who has no criminal record,[3] has lived in the United States since September 2021, was issued a Prima Facie Determination under the Violence Against Women Act by immigration authorities in January 2024, and was issued employment authorization by immigration authorities in August 2024, is subject to discretionary release under § 1226(a) as petitioner contends, or whether petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue. 8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202. Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing." Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)). Respondents contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention. (ECF No. 7 at 1.)

The Court concludes that § 1226(a) applies to petitioner. Petitioner was detained by

---

[3] Respondents make no claim that petitioner has a criminal record.

immigration officials in March 2026 after residing in the United States for 4.5 years, after petitioner was issued a Prima Facie Determination on his Violence Against Women Act application by USCIS in January 2024 that was subsequently renewed in December 2025 and extended through June 21, 2026, and after petitioner was issued employment authorization by USCIS in August 2024, which is valid through August 5, 2029.  Respondents do not dispute any of these facts.

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[4] of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals']  construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

---

[4]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondents' reliance on Buenrostro-Mendez, 166 F.4th 494 and Avila, 2026 WL 819258, is unavailing. This Court does not find Buenrostro-Mendez or Avila to be persuasive, and instead finds the analysis in Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025), and Barbosa da Cunha v. Freden, No. 25-3141 (2d Cir. Apr. 28, 2026), to be more persuasive. See also Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026); Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same). As the Second Circuit explained in Barbosa da Cunha:

> …Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly

thereafter.

> This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose. It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226. It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.

Barbosa da Cunha v. Freden, No. 25-3141 at 6.  In any event, neither Buenrostro-Mendez nor Avila are binding on this Court.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has resided in this country for 4.5 years and received various authorizations from immigration officials, including issuance of a Prima Facie Determination on petitioner's Violence Against Women Act application in January 2024 that was subsequently renewed multiple times and extended through June 2026, and after employment authorization in August 2024, and petitioner's March 2026 arrest and detention were not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  As such, petitioner should have been provided a bond hearing before his detention and is entitled to relief on his statutory claim.

### B.    Due Process Claim (Claim Two)

Petitioner also argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment.  (ECF No. 1 at 14.)  Respondents argue petitioner's due process claims fail because petitioner does not possess a right to freedom from immigration

detention in any form other than the form provided by Congress.  (ECF No. 7 at 1.)  Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See Young v. Harper, 520 U.S. 143, 147-49 (1997) (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).

The Court finds that petitioner has a constitutionally protected liberty interest in remaining free from custody.  Petitioner has lived in the United States for 4.5 years and applied for various forms of immigration relief, including under the Violence Against Women Act and employment authorization.  Petitioner received a January 2024 Prima Facie Determination that petitioner had made a prima case for classification under the self-petitioning provisions of the Violence Against

Women Act, which has been extended through June 21, 2026, and petitioner received employment authorization in August 2024, which is valid through August 2029.  This is not a situation of a noncitizen who was unknown to government immigration officials, but one who has followed various procedures to seek and obtain immigration relief, and who has obtained some forms of relief.  This created a reasonable expectation in his continued release while his immigration applications were pending.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over 4.5 years, petitioner lived in the United States free from custody.  Petitioner obtained a Prima Facie Determination on his Violence Against Women Act petition from immigration officials, obtained work authorization from immigration officials, worked, and lived with his

partner and supported his three United States citizen children, who are minors. The duration of his time free from custody elevates and underscores his interest in liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not dispute any of petitioner's facts and do not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF No. 7.) In addition, respondents do not contend that petitioner has a criminal record. (Id.) Here, petitioner has been detained since March 20, 2026, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously issued a Prima Facie Determination on his Violence Against Women Act petition from immigration officials, which was renewed in December 2025 and is valid through June 2026.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is also entitled to relief on his due process claim.

## V.    CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on two separate grounds:  (1) petitioner's statutory claim (claim one), and (2) petitioner's due process claim (claim two).

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondents be ordered to IMMEDIATELY release petitioner Jose Wilberto Cerrano Viana (A-214-557-219) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release

3.  Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation

11

bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  Petitioner shall be allowed to have his counsel present at any such hearing.  This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 29, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Vian2362.imm.release(2)/2

12